### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| NARESH VISSA RAMMOHAN, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>STANLEY BLACK & DECKER, INC., DONALD ALLAN, JR., JAMES M. LOREE, AND LEE MCCHESNEY,<br><br>     Defendants. | **CIVIL CASE NO. 3:23-cv-00369**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br>March 24, 2023 |

Plaintiff Naresh Vissa Rammohan ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Stanley Black & Decker, Inc. ("Stanley" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.  This is a securities class action on behalf of all persons or entities who purchased or otherwise acquired Stanley common stock between October 28, 2021 and July 28, 2022, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against Stanley and certain of the Company's executive officers and directors.

2.     At the outset of the Class Period, Stanley was undergoing a multi-year simplification of its business units through acquisitions and divestitures to return to the Company's roots of primarily defining itself as a tool manufacturer. Throughout this transformation, Stanley enjoyed what it described as the strongest consumer demand environment in the Company's history to finance the Company's activities.

3.     Specifically, Stanley repeatedly informed investors throughout 2021 and into 2022 that the COVID-19 pandemic environment of stay-at-home orders and remote work had led many consumers to spend more time at home, thus spurring increased home remodeling and do-it-yourself ("DIY") projects, consequently creating high consumer demand for Stanley's tools and outdoor products.

4.     Throughout the Class Period, Defendants misrepresented to investors and the public that despite rising inflation and interest rates, and Stanley's multiple rounds of product price increases, that pandemic-fueled, heightened consumer demand for tools and outdoor products would be sustainable through 2022 due to continuing construction and DIY projects.

5.     Additionally, while Defendants admitted at all relevant times that supply chain management and component sourcing was integral for Stanley to keep production in pace with demand in its core Tools and Outdoor business, Defendants misrepresented to investors throughout the Class Period that they were closely monitoring the effects of inflation and price increases on consumer demand, and that Defendants would react accordingly if the demand environment changed.

6.     Contrary to Defendants' statements touting the heightened consumer demand and their ability to react accordingly to any effects of inflation or price increases on said demand, Stanley was incapable of nimbly responding to serious headwinds that indicated the pandemic

demand bubble was soon to pop. Furthermore, Defendants knew that their statements were false and misleading as they admittedly tracked Stanley's point-of-sale results to monitor demand.

7.       The truth began to be revealed on April 28, 2022 when Defendants issued a set of partial corrective disclosures stating that Stanley's Tools and Outdoor net sales had dropped in the Company's first fiscal quarter of 2022 to $4.4 billion, and that Stanley was accordingly revising its earnings per share guidance down for fiscal year 2022. Defendants also disclosed that Stanley's gross margin dropped "610 basis points from prior year as price realization was more than offset primarily by commodity inflation, higher supply chain costs to serve demand *and lower volumes*."

8.       On this news, Stanley stock fell 8.6% or $12.01 per share, from a close of $139.14 per share on April 27, 2022, to a close of $127.13 on April 28, 2022.

9.       However, Defendants continued to make false and misleading statements regarding the Company's deteriorating demand. For example, the Company's April 28, 2022 press release stated that "[v]olume was in line with expectations, but constrained by temporary electronic component supply challenges, which have continued to improve." On an earnings call held for investors that morning, Stanley's Chief Executive Officer ("CEO") James Loree echoed the press release in stating that component supply, rather than falling demand, was the primary headwind for Stanley's sales volume, noting "[t]he volume could have been higher, but for the supply-constrained environment that we continue to make progress on resolving".

10.     Defendants repeatedly mislead investors about the Company's core Tools and Outdoor segment, stating that the Tools and Outdoor sales decline was attributable to supply chain issues rather than falling demand. For example, Defendant Loree reassured investors that "while the boom global conditions of 2020 and 2021 have leveled off, the fundamentals and secular drivers remain healthy and are still very much intact", that "the combination of repair/remodel,

new residential construction and commercial construction have plenty of runway to continue to drive enduring demand", and that "we will monitor and respond accordingly if and when we observe any adverse impact from a higher interest rate environment and/or significant elasticity of demand effects following our pricing actions." Defendant Allan also reassured investors that "the headline for the first quarter is that demand for our products remains healthy" and, in response to an analyst question, that there "is not an assumption that there's some significant slowdown related to overall demand."

11.     On July 28, 2022, the truth was fully revealed when Stanley released its Q2 2022 results in a press release before stock markets opened for trading. In the press release, Defendant Allan stated that "significantly slower demand in late May and June [] drove the majority of the challenges we faced this quarter" and that "[a]s the softening of the demand environment accelerated rapidly during the last portion of the quarter … [w]e are now preparing for demand to normalize closer to 2019 levels for the remainder of 2022." Defendants also contemporaneously held an earnings call for investors and analysts the morning of July 28, 2022. Defendants revealed on the call that, due to a sharp slowdown in consumer demand for power tools in May through June 2022, sales volumes had in fact shrunk by double digits, the Company's net income for its second quarter had plunged to $87.6M compared to $459.5M in the year-earlier quarter, and that Stanley was cutting its 2022 earnings per share guidance by nearly half.

12.     Upon the news that demand had plummeted, that sales volumes had shrunk, and that Stanley was slashing its earnings guidance for 2022 by nearly half, Stanley's common stock, which had closed at $117.45 per share the evening prior, fell to a closing price of $98.58 per share on July 28, 2022 on heavy trading volume, representing over a 16% day-over-day drop.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

15.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District. Stanley Black & Decker is headquartered in this District, with its principal place of business located at 1000 Stanley Drive, New Britain, CT 06053.

17.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means of and instrumentalities of interstate commerce, including, but not limited to, the mail services, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

18.     Plaintiff Naresh Vissa Rammohan purchased Stanley common stock during the Class Period as set forth herein, and in his certification filed herewith, and has been damaged thereby.

19.     Defendant Stanley Black & Decker, Inc. is a corporation organized and headquartered in the state of Connecticut at 1000 Stanley Drive, New Britain, CT. Its common stock trades on the New York Stock Exchange ("NYSE") and is traded under the symbol "SWK".

20.     Defendant Donald Allan, Jr. ("Donald Allan" or simply "Allan") is Stanley's President, CEO, and a member of Stanley's board of directors. Allan was employed as Stanley's CEO effective July 1, 2022, previously serving as Stanley's President and Chief Financial Officer ("CFO").

21.     Defendant James M. Loree ("Loree") was Stanley's President and CEO prior to Allan, serving from August 1, 2016 through June 30, 2022. Loree joined Stanley in 1999, and served in numerous roles throughout his tenure including as CFO, and later as Chief Operating Officer ("COO").

22.     Defendant Lee McChesney ("McChesney") was Stanley's Vice President of Corporate Finance, as well as the CFO of Stanley's Tools & Storage business segments at all times during the Class Period. McChesney departed Stanley in October 2022.

23.     Allan, Loree, and McChesney are collectively referred to herein as the "Individual Defendants."

24.     Stanley and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

25.     By reason of the Individual Defendants' positions with the Company as executive officers, the Individual Defendants possessed the power and authority to control the contents of Stanley's annual and quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual

Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them, but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### I.   Background

26.   Stanley Black & Decker is a global manufacturer of, *inter alia*, hand tools, power tools, and outdoor products for consumer and commercial customers, as well as engineered fastening systems for industrial customers.

27.   Over the last few years, Stanley Black & Decker implemented a "corporate simplification" to spin off some of its business units and focus Company investments and attention into two main business segments: Tools & Outdoor, and Industrial.

28.   Stanley Black & Decker's Tools & Outdoor segment sells tools and outdoor equipment to a variety of customers including retail consumers, professional end users, distributors, and industrial customers across a wide variety of industries and geographies. The Company has multiple business units within its Tools & Outdoor segment, including: its Power Tools Group (PTG), which includes drills, impact wrenches and drivers, grinders, saws, routers, sanders, and pneumatic tools *inter alia*; Hand Tools/Accessories & Storage (HTAS), which includes planes, hammers, clamps, vises, knives, saws, chisels *inter alia*; and Outdoor Power

Equipment, which includes hedge trimmers, lawn mowers, tractors, and other lawn and garden products.

29.   The majority of sales for the Tools & Outdoor segment, which comprised a whopping 82% and 85% of Stanley's total revenues in 2021 and 2022, respectively, are distributed through retailers, including home centers, mass merchants, hardware stores, and retail lumber yards. Stanley Black & Decker manufactures and markets multiple brands of consumer and professional products across its Tools & Outdoor segment, including DeWalt, Black+Decker, Stanley, Craftsman, Irwin, Mac Tools, Porter-Cable, Cub Cadet, Hustler, and Troy-Bilt. Given Stanley is heavily dependent on the United States market, from which the Company derived approximately 63% of its revenue in 2022, Stanley monitors sales volume and point-of-sale ("POS") data for its products to measure demand.

30.   Stanley Black & Decker has made a concerted effort in recent years through divestitures and acquisitions of certain business units to focus the Company around its Tools & Outdoor segment. In November and December 2021, the Company acquired MTD Holdings (an outdoor power equipment manufacturer) and Excel Industries (a turf-care equipment company), which were folded into the umbrella of Stanley Black & Decker's Tools & Outdoor business.

31.   In July 2022, Stanley Black & Decker sold its Convergent Security Solutions business, comprising commercial electronic security and healthcare operations, to the Swedish company Securitas AB, as well as sold its Mechanical Access Solutions mechanical doors business to Allegion PLC, and announced an agreement to sell its Stanley Oil & Gas business to British oil services company Pipeline Technique Limited. This simplified portfolio means that Stanley Black & Decker, which was once a highly diversified company, is increasingly focused on its Tools & Outdoor business.

II.     **Defendants' Material Misrepresentations and Omissions**

32.     The class period begins on October 28, 2021, when Stanley reported its financial results for the third fiscal quarter ending October 1, 2021. Defendants largely expressed excitement over the extraordinarily high consumer demand environment that the COVID-19 pandemic had brought for Stanley's products. Defendants reassured investors that the booming demand would remained heightened, that Defendants were carefully monitoring whether consumer demand would be affected by rising inflation, interest rates, and numerous price increases across Stanley's portfolio, and that Defendants would react accordingly if such factors affected demand.

33.     On October 28, 2021, Stanley issued a press release before trading began on the NYSE that day, reporting topline financial and operating results for the Company's third fiscal quarter of 2021. In the release, Defendant Loree informed investors enthusiastically that "[w]e are pleased to deliver 10% organic growth and record third quarter revenues *as customer demand remains robust* across the majority of our end markets", adding that Stanley's "multi-year growth story remains compelling given the positive *secular demand trends and unique opportunities ahead*".[1] Rather than disclose the Company's slowing demand, Defendant Loree in the press release falsely blamed a "universally difficult supply chain environment" and "inflationary trends" as the primary headwinds for Stanley's growth. The press release went on to further assuage investors that "*[d]emand was robust across all markets* as the *secular shifts* related to the reconnection with the home and garden and eCommerce were amplified by our industry-leading innovation and *strong professional demand*." The press release indicated that, due to the demand, "North America *reflected retail growth* as well as *consistently strong commercial and industrial channels*."

---

[1] Emphasis added unless otherwise specified.

34.     On the same morning as the October 28, 2021 press release, Stanley held a pre-market conference call with investors to discuss the Company's financial and operating results for the third fiscal quarter of 2021. On the call, Defendant Loree again identified the "unusually complex supply chain environment" as a primary headwind while reassuring investors that "[c]ustomer *demand remained at robust levels*." Indeed, Defendant Loree falsely assured investors that the elevated demand would persist, stating "*we remain highly confident in our multiyear growth*" and that "*several positive secular demand trends* … are benefiting our businesses, and *we remain bullish on the resi[dential] and nonresi[dential] construction markets* as well as the industrial recovery." Defendant Allan, who at the time of the call was Stanley's CFO, then chimed in to suggest that Stanley had accurately forecast the changing demand environment across 2021 into 2022, stating that "*[o]ur thesis on demand is playing out* as underlying construction activity remains strong and the Pro is driving growth[.]" Defendant Allan also went as far as to reassure investors the high-demand trend would last, adding that Defendants tracked POS data to monitor demand:

> Further *demonstrating the durability of these trends*, our latest POS results showed mid-single-digit growth over the last 4 weeks, covering late September through mid-October, with the last measured week up double digits, *a very good signal of the healthy backdrop in U.S. retail*.

35.     Later during the October 28, 2021 earnings call, Defendant McChesney echoed the false reassurance Defendant Loree had provided regarding continued growth in Stanley's Tools & Outdoor business, stating that Stanley had "invested in inventory to serve the *robust demand environment here in 2021* and in '22 and beyond." In doing do, Defendant McChesney noted that the heightened demand was "*a major item that explains* [Stanley's] *year-over-year performance*."

36.     Further, Defendant Allan also misrepresented during October 28, 2021 call Stanley's supposed ability to react to potential changes in the then-heightened demand

environment. For example, Defendant Loree misstated that Stanley was "enjoying positive *secular trends*, vibrant markets and a strong array of growth catalysts, *and we expect this to continue*." Moreover, Defendant Allan reassured that:

> [T]he *market demand environment remains very strong and supportive*. We have a phenomenal set of growth catalysts across the businesses, and *we are actively addressing the supply and inflation environment*, *which has not worsened* from what we have experienced in Q3. *We remain well positioned to deliver above-market organic growth* with operating leverage, resulting in strong free cash flow generation that will drive top quartile shareholder returns over the long term.

37.     On the same October 28, 2021 earnings call, Defendant Loree summarized the prepared remarks for the call by reiterating to investors that "*we continue to execute on the strong demand trends and deliver exceptional organic growth despite the temporarily challenging supply chain environment*."

38.     In response to an analyst question on the same earnings call regarding sales volume growth, Defendants Loree and Allan reiterated that demand was strong and further growth was on the horizon for Stanley. Defendant Loree reaffirmed that:

> The *demand is strong*. *The conditions are supportive*" and "[s]o *serving the demand, I think, is the challenge*. … *[W]e're confident we've created the demand and the environment is supportive*, and we need to serve the demand. That is challenging. But you can see we delivered on our third quarter organic growth commitment, 10% despite the challenges that we faced. And so we have a resilient organization and we have all the growth programs in place, and *we have a high level of confidence that we can deliver that sort of growth*.

39.     On February 1, 2022, Stanley issued a press release and held an earnings call for investors to report its financial results for the fourth quarter and fiscal year 2022 ended January 1, 2022. During the February 1, 2022 earnings call, Defendant Loree repeatedly reassured investors that demand would remain high and that, should demand drop, Stanley would react accordingly. Defendant Loree assured that the demand environment of 2021 was continuing, stating "[w]e benefited from extraordinarily strong customer demand, *which continues* for our innovative

products and portfolio of brands," and that such demand would be buoyed by "*several positive secular demand trends that are benefiting our businesses.*"

40.     Further, during the February 1, 2022 earnings call, Defendant Loree reassured investors that management was actively monitoring for potential changes in demand, adding "*we will carefully watch for any impacts* from a higher interest rate environment *or changes in the elasticity of demand following price increases and react accordingly if things change"* and that management was "*confident in our ability to execute in today's dynamic, volatile environment*."

41.     When asked by an analyst just how exactly Stanley was prepared to mitigate changes in demand, Defendant Loree further states "*we just need to continue to monitor price elasticity, competitive dynamics, all those different things* that one does when one manages in an environment like this." Specifically as to the effect of product price increases on demand, Defendant Allan told another analyst that management would "*watch this very closely*, and it's why we're taking this approach on the volume side where *we're not being overly aggressive in forecasting where the volume might go.*"

42.     The statements in paragraphs ¶¶33–41 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) rising interest rates, inflation, and trends in returning to work away from home were in fact quickly eroding then-heightened demand for Stanley's tools and outdoor products; (ii) the heightened, extraordinary demand Stanley had enjoyed as a result of the COVID-19 pandemic in 2021 into 2022 was returning to 2019 pre-pandemic levels; (iii) Stanley's operations were already showing signs of slowing demand; (iv) as a result of

reorganization, share repurchasing, and dividend growth, Stanley lacked the cash to react with agility to changes in demand; and (v) as a result of Stanley's inability to react to a sharp decline in demand, the Company's results and metrics, particularly sales volume, were severely negatively impacted. As a result of the foregoing, Stanley's public statements were materially false and misleading at all relevant times.

### III.   The Truth Emerges In A Series Of Partially Corrective Disclosures

43.     On the morning of April 28, 2022, Stanley issued a press release the morning of April 28, 2022, providing that "[n]et sales for the quarter were … partially offset by lower volume (-6%)[.]" Contemporaneously, Stanley also filed a Form 10-Q with the SEC detailing the Company's financial and operating results for the first fiscal quarter ended April 2, 2022.  Stanley disclosed in the 1Q Fiscal 2022 Form 10-Q that net sales for the Company's first quarter were "partially offset by a 6% … decrease from volume", furtively indicating that demand was slowing.

44.     Furthermore, on an earnings call for investors held the morning of April 28, 2022, Defendant Allan confirmed that, as a result of the foregoing, Defendants were "updating … adjusted earnings per share to a range of $9.50 up to $10.50", representing a cut of nearly 16 to 21% from the adjusted earnings per share range of $12 up to $12.50 Stanley had announced for its fiscal year 2022.

45.     On this news, Stanley's stock declined from a close at $139.14 per share on April 27, 2022 to a close at $127.13 on the day of the report and call. This represented a drop of $12.01 per share, or around 8.6% in one day.

46.     However, Defendants continued to falsely misrepresent the nature and extent of Stanley's deteriorating demand and sales. For example, the April 28, 2022 press release falsely

portrayed the drop in sales volume as "in line with expectations", blaming "temporary electronic component supply challenges, which have continued to improve."

47.    Further, Defendant Loree stated in the press release that "[w]hile inflationary pressures remain a macro headwind" on demand, "*we have demonstrated our ability to offset those pressures*." Despite the drop in volume, the press release continued to describe demand as healthy:

> Using 2019 as a baseline, *U.S. retail point-of-sale demand remained robust* driven by strong professional construction markets and innovation with POS growth rates stronger than the growth rates experienced in 2H'21. *Channel inventory in U.S. retail remained below historical levels*, in particular for professional power tools.

48.    During the April 28, 2022 earnings call, Defendant Allan described the financial results for the quarter, stating "*[t]he headline for the first quarter is that demand for our products remains healthy*" and that "*we have not seen evidence of broad demand destruction* related to price elasticity." In describing the results of Stanley's Tools & Outdoor segment, Allan continued to reassure investors that:

> U.S. retail point-of-sale remains at healthy levels, supported by strong professional construction markets and our innovation. While the POS comps were down versus a stimulus-aided Q1 2021, the normalized 2019 comparative growth rates accelerated from the levels we experienced in the back half of 2021. This strengthens our conviction that *we continue to experience a very solid demand environment*.

49.    Defendant Allan additionally made false and misleading statements during the question-and-answer portion of the earnings call. In response to an analyst who noted that Defendants had revised sales volumes for Stanley's fiscal year 2022 down from single-digit growth to "kind of flat," Defendant Allan countered repeatedly that demand was not a driver: "*[i]t's not necessarily a view that we think demand is slowing. … [I]t is not an assumption that there's some significant slowdown related to overall demand.*"

50.    Defendant Loree also continued to make false and misleading statements during the April 28, 2022 earnings call. For example, Defendant Loree reassured that while "[o]rganic revenue was down 1% … *customer demand remained strong* across many of our global markets and price realization accelerated sequentially from the fourth quarter." Admitting that "[t]*he volume could have been higher*", Defendant Loree again blamed the downturn on supply chain and procurement issues rather than consumer demand, stating that "the supply-constrained environment that we continue to make progress on resolving, with added supply of semiconductors and electronic components during this quarter."

51.    On the same call, Defendant Loree specifically reassured investors that Stanley would adapt to the end of the pandemic demand boom accordingly, stating "while the boom global conditions of 2020 and 2021 have leveled off, *the fundamentals and secular drivers remain healthy and are still very much intact*. As we look out over the balance of the year, the combination of repair/remodel, new residential construction and commercial construction have *plenty of runway to continue to drive enduring demand* in many of our markets around the world." While Defendant Loree pointedly acknowledged that the days of a pandemic demand boom were coming to a close, he reassured investors that "we see *continued momentum within our core markets*". Defendant Loree further reassured investors that Stanley management was prepared for any change in the demand environment, stating that "*we will monitor and respond accordingly if and when we observe any adverse impact* from a higher interest rate environment and/or significant elasticity of demand effects following our pricing actions."

52.    The statements in paragraphs ¶¶46–51 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants

or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) rising interest rates, inflation, and trends in returning to work away from home were in fact quickly eroding then-heightened demand for Stanley's tools and outdoor products; (ii) the heightened, extraordinary demand Stanley had enjoyed as a result of the COVID-19 pandemic in 2021 into 2022 was returning to 2019 pre-pandemic levels; (iii) Stanley's operations were already showing signs of slowing demand; (iv) as a result of reorganization, share repurchasing, and dividend growth, Stanley lacked the cash to react with agility to changes in demand; and (v) as a result of Stanley's inability to react to a sharp decline in demand, the Company's results and metrics, particularly sales volume, were severely negatively impacted. As a result of the foregoing, Stanley's public statements were materially false and misleading at all relevant times.

53.     On July 28, 2022, before market open, Stanley issued a press release reporting the Company's financial and operational results for the second quarter 2022 ended July 2, 2022. The press release stated, in pertinent part, that "the macroeconomic environment—including inflation, rising interest rates and significantly slower demand in late May and June—drove the majority of the challenges we faced this quarter", "the softening of the demand environment accelerated rapidly during the last portion of the quarter", and that "[n]et sales for the quarter were … partially offset by lower volume (-13%).".

54.     Additionally, that same day, Defendants held an earnings call for investors where they had admitted demand had seen a sharp drop-off. Defendant Allan—who become CEO on July 1, 2022—stated, in relevant part, that:

> [W]e continue to navigate a dynamic macro environment, including inflation, rising interest rates; and now late in the quarter, we started to see these factors impact retail customer demand across our global tools and outdoor markets. The significantly slower demand trends in June, combined with a very late start to the outdoor season due to weather,

resulted in significant volume pressure versus expectations, and revenue landed well below our plan. In response to the sudden shift in demand, we have taken immediate corrective cost actions, which are already in progress. We are now expecting demand to normalize closer to 2019 levels for the remainder of 2022.

55.     Defendants could not hide that demand for Stanley's Tools and Outdoor segment had nosedived, with Defendant Allan stating on the call that Stanley "saw a swift deterioration in consumer tools and outdoor demand" and that "the changes from this new demand environment… caused us to revise our 2022 adjusted diluted EPS range down to $5 up to $6", representing over a 50% cut to the EPS figures Stanley had projected for its fiscal year 2022.

56.     On this news, Stanley's stock price declined $18.87, *or more than 16%*, from a close of $117.45 per share on July 27, 2022 to a close of $98.58 per share on July 28, 2022.

57.     The financial media and analysts were quick to react to the news, with analysts from Mizuho Financial Group stating that the massive guidance cut "***truncates anything that occurred in the quarter***", adding "***this is significantly worse than we could have imagined***." MarketWatch, a Dow Jones company, reported that July 28, 2022 was the "stock's biggest percentage decline since … March 18, 2020." Analysts from Raymond James and CGS-CIMB co-authored a July 29, 2022 report about Stanley titled "***Bordering on 'Un-Investible'…***", emphasizing "Stanley's sharply deteriorating volumes and bloated inventories[.]"

## ADDITIONAL SCIENTER ALLEGATIONS

58.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information

reflecting the true facts regarding Stanley, their control over, and/or receipt and/or modification of Stanley's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Stanley, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

59.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Stanley's common stock and operated as a fraud or deceit on Class Period purchasers of Stanley common stock by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Stanley's common stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Stanley common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICATION OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

60.     At all relevant times, the market for Stanley's common stock was an efficient market for the following reasons, among others:

a)      Stanley common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

b)      Stanley filed periodic public reports with the SEC and the NYSE; and

c)      Stanley regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national

circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

61.     As a result of the foregoing, the market for Stanley common stock promptly digested current information regarding Stanley from all publicly available sources and reflected such information in the prices of the common stock. Under these circumstances, all purchasers of Stanley common stock during the Class Period suffered similar injury through their purchase of Stanley common stock at artificially inflated prices and a presumption of reliance applies.

**<u>NO SAFE HARBOR</u>**

62.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Stanley who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Stanley common stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64.     The members of the Class are so numerous that joinder of all members is impracticable, since Stanley has more than a billion shares of stock outstanding and because the Company's shares were actively traded on the NYSE. As of March 18, 2023, Stanley had more than 153.1 million  shares outstanding. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

65.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     whether the Exchange Act was violated by Defendants;

(b)      whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e)     whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f)     whether the price of Stanley common stock was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g)     whether the members of the Class have sustained damages as a result of the decline in value of Stanley's stock when the truth was revealed, and if so, what is the appropriate measure of damages.

66.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

67.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT I**
**Violation of Section 10(b) of**
**the Exchange Act and SEC Rule 10b-5**
**(Against All Defendants)**

69.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

70.     This Count is asserted by Plaintiff on behalf of herself and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

71.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Stanley's common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Stanley's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

72.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's common stock in an effort to maintain artificially high market prices for Stanley's common stock in violation of Section 10(b) of the Exchange Act and Rule 10-5.

73.     As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly

traded common stock would be based on truthful, complete, and accurate information. Defendants' material misrepresentations and omissions as set forth herein violated that duty.

74.     Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class. Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

75.     As a result of Defendants' fraudulent activity, the market price of Stanley was artificially inflated during the Class Period.

76.     In ignorance of the true financial condition of Stanley, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Stanley containing the misleading information, purchased or otherwise acquired Stanley's common stock at artificially inflated prices during the Class Period.

77.     Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Stanley's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Stanley's stock in reliance on the integrity of the market price of that common stock, and Defendants manipulated the price of Stanley's common stock through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Stanley.

78.     Throughout the Class Period, Defendants were aware of material non-public information concerning Stanley's fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly

concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

79.     As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Stanley common stock during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

80.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

81.     During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains, solely under the control of the Defendants.

82.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. Throughout the Class Period, the

Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

83.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Stanley's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Stanley's corporate releases detailed herein and is therefore responsible and liable for the misrepresentations contained herein.

84.     The Individual Defendants acted as controlling persons of Stanley within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Stanley to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Stanley and all of its employees. As alleged above, Stanley is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

85.    As a direct and proximate result of the wrongful conduct of Stanley and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)    Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and Levi & Korsinsky, LLP as Class counsel;

(B)    Awarding Plaintiff and the members of the Class damages, including interest;

(C)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D)    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 24, 2023.                    Respectfully submitted,


                                         */s/ Gregory M. Potrepka*
                                         Gregory M. Potrepka (CT30056)

                                         **LEVI & KORSINSKY, LLP**
                                         Shannon L. Hopkins (CT29744)
                                         Gregory M. Potrepka (CT30056)
                                         Cole von Richthofen (*to be admitted pro hac vice*)
                                         1111 Summer Street, Suite 403
                                         Stamford, Connecticut 06905
                                         Tel.: (203) 992-4523
                                         Fax: (212) 363-7171
                                         shopkins@zlk.com
                                         gpotrepka@zlk.com

cvrichthofen@zlk.com

*Counsel for Plaintiff*