**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

NARESH VISSA RAMMOHAN,
individually and on behalf of all others
similarly situated,

Plaintiff,

v.

STANLEY BLACK & DECKER, INC.,
DONALD ALLAN, JR., JAMES M. LOREE,
AND LEE MCCHESNEY,

Defendants.

Civil Case No. 3:23-cv-00369 (KAD)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**ORAL ARGUMENT REQUESTED**

Nothing in Plaintiff's Opposition changes the fact that Plaintiff's defective Complaint[1] should be dismissed.  Contrary to the heightened pleading standards of Rule 9(b) and the PSLRA, Plaintiff has failed to plead with requisite specificity facts demonstrating the central allegation in its case—that Defendants "hid significant post-pandemic deteriorating demand". (Opp. 1.)  Critically, despite Plaintiff's argument that "it was evident, through internal reports, spreadsheets and presentations, that demand for Stanley's Tools & Outdoors was in 'rampant decline'" (*id.*), Plaintiff has failed to identify by name or date ***even a single document, meeting or communication*** supporting that allegation—which is fatal.  Nothing is pleaded with the required specificity, and while Plaintiff relies heavily on CWs, the fact that *none* can identify even *one* specific document, communication or meeting substantiating these allegations undermines their reliability.  Indeed, Plaintiff challenges the Company's disclosures of its point-of-sale ("POS") data, yet fails to plead that the reported data differed from internal reports.  The alleged Lowe's "pull-in" in Q4 2021 also does not demonstrate declining demand.  To the contrary, Plaintiff concedes that (1) Lowe's engaged in pull-ins prior to the Class Period at a time of undeniably strong demand (Compl. ¶¶ 2, 62); (2) Lowe's anticipated *continued strong demand* in Q1 2022 (MTD 20-21); and (3) "Lowe's continued ordering in 2022" (Compl. ¶¶ 74-75).  That is all consistent with continued demand, and *inconsistent* with Plaintiff's allegations of fraud.  Plaintiff's allegations are speculative, implausible and unsupported.

Plaintiff's Complaint should be dismissed for failure to state a claim.  *First*, none of the alleged misstatements are actionable—both because Plaintiff has failed sufficiently to plead how *any* were false or misleading when made, and because virtually all of them are not actionable as a matter of law.  *Second*, Plaintiff also has failed to plead scienter on the part of any

---

[1] Capitalized and abbreviated terms have the same meaning as in Defendants' opening Memorandum.  "MTD" refers to Defendants' initial Memorandum of Law, and "Opp." to Plaintiff's Memorandum of Law in Opposition.

of the Individual Defendants—an independent ground for dismissal.  Plaintiff has not pointed to *anything* showing that the Individual Defendants engaged in "deliberate, illegal behavior" or conduct that was "highly unreasonable".  In fact, Plaintiff concedes the opposite—noting that throughout this period, Stanley's demand forecasts reflected "what sales was saying was possible." (*Id.* ¶ 86.)  *Third*, because Plaintiff has failed to state a claim under Section 10(b), its Section 20 claims against the Individual Defendants also fail.  Plaintiff's claims thus should all be dismissed with prejudice.  Amendment would be futile and should not be permitted.

ARGUMENT

**I.  PLAINTIFF'S SECTION 10(b) CLAIMS FAIL AS A MATTER OF LAW.**

    **A.  Plaintiff Fails To Allege Any Actionable Misstatement or Omission.**

        1.  <u>Plaintiff Does Not Allege Facts That Demonstrate Any Challenged Statement Was False or Misleading When Made.</u>

    ***Failure To Meet Pleading Requirements:***  Contrary to the pleading requirements of Rule 9(b) and the PSLRA, Plaintiff has failed to plead with requisite specificity facts sufficient to show that *any* of the statements at issue in this case were false or misleading when made. (Opp. 12-13, 15.)  Plaintiff's failure to identify by name or date *even a single document, meeting or communication* supporting its allegations is not only telling, but fatal.[2]  That pleading failure cannot be overcome by the CWs, who likewise cannot point to a single document, meeting or communication—by name, date or contents—that support these allegations or render any of Defendants' statements false or misleading at the time they were made.  *None* of the CWs allege *particularized* facts that show customer demand was declining at the time any of these

---

[2] *See, e.g.*, *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (dismissing complaint that "fails to specify exactly what information was contained in the report or how said information contradicted Defendants' public statements"); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient").

statements were made, and CWs' "anecdotes and conclusory statements of belief" are not enough. *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010). Plaintiff asserts that the CWs "uniformly stated that demand was declining" (Opp. 24), but the pleadings on which Plaintiff relies are nothing more than imprecise, unsupported generalizations.[3] "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016). Plaintiff alleges that customer demand was tracked using POS data (Compl. ¶ 104), but offers no specifics about *any* POS reports, let alone pleads any facts that would show a demand decline (or a divergence between the POS data and Defendants' public statements). (*See* MTD 16-17.) Nor does Plaintiff identify and plead any *facts* learned at *any* specific meeting that *contradict* Defendants' public statements.[4] (*Id*. at 17-18.) Moreover, even if Plaintiff had provided particularized allegations of "demand forecast" shortfalls—and it has not—that would still fail to show decreasing demand, because, as Plaintiff concedes, demand forecasts related solely to *sales goals*.[5]

*The Alleged Lowe's "Pull-In" Does Not Demonstrate Falsity:* Plaintiff's argument that the "undisclosed fourth quarter 2021 pull-in gives rise to an actionable federal

---

[3] *See e.g.*, Compl. ¶ 72 (CW3 "confirmed that it was noticed that demand was slowing", without specifying precisely when, by whom, for which products, or by what amount); ¶ 71 (CW2 asserts that a decline in demand was "evident . . . based on meetings CW 2 attended" without identifying the amount of alleged decline, or even a single such meeting, its date, what was discussed, or its attendees). Such generalized and unsupported pleading is inadequate to demonstrate that any of Defendants' statements was false and misleading *when made*. (MTD 13-15.)

[4] Plaintiff's allegations about alleged MAP meetings are woefully inadequate. (Opp. 26.) Not only does Plaintiff concede that the MAP meetings were *sales* meetings, run by "sales leaders" to discuss "sales targets" and "what they needed to do to get there" (Compl. ¶¶ 52, 54), but Plaintiff fails to plead any specific details about *anything* allegedly discussed at any of those meetings—by date, product, customer or volume—sufficient to show *either* declining demand or that any of Defendants' statements were false or misleading when made. Further, Plaintiff fails to allege any Individual Defendant's attendance at a *specific* meeting that discussed declining demand.

[5] *See* Compl. ¶ 45 ("[D]emand forecast was based on what sales wanted to achieve not what anyone believed would ship."); ¶ 44 ("At Stanley, sales goals controlled the demand forecast"). Allegations of optimistic sales targets (*e.g., id.* ¶ 79 ("CW4 stated that Stanley over-forecasted sales for 2022")) do *not* mean that demand was declining, and Plaintiff concedes that the demand forecasts reflected "what sales was saying is possible". (*Id.* ¶ 86.)

securities law claim" (Opp. 13), rests on a misapplication of both the facts and the law.  *First*, Plaintiff has not pleaded facts to show that the alleged Lowe's "pull-in" is itself indicative of declining demand.  Plaintiff concedes that "pull-in" transactions are permissible and commonplace (*id.* at 14), and that there were pull-ins prior to the Class Period—including in June 2021, when demand for the Company's products was indisputably strong.  (*See* Compl. ¶¶ 62, 93.)  Plaintiff also cannot explain how a single pull-in during Q4 2021 evidences declining customer demand when, as Plaintiff concedes, Lowe's *continued to purchase* from Stanley Black & Decker in 2022.[6]  (*See id.* ¶ 64.)  And it is telling that Plaintiff cannot point to *anything* to corroborate its assertions, other than unsupported speculation by different CWs, *none* of whom are alleged to have negotiated this transaction with Lowe's.[7]  (*Id.* ¶¶ 87, 89.)

   *Second*, Plaintiff's suggestion that because Stanley "put the source of [its] revenue at issue" it was obligated to disclose the alleged Lowe's pull-in is wrong.  (Opp. 16.)  Plaintiff does not—because it cannot—identify an affirmative duty to disclose pull-in transactions (and, tellingly, Plaintiff does not contend any of the earlier alleged pull-ins should have been so disclosed).  *See In re Donna Karan Int'l Sec. Litig.*, No. 97-CV-2011 CBA, 1998 WL 637547, at *13 (E.D.N.Y. Aug. 14, 1998).  Indeed, the unobjectionable nature of the conduct alleged here (as well as the inadequacy of Plaintiff's pleading) is demonstrated by even a cursory comparison to the cases upon which Plaintiff relies.  For example, Plaintiff's allegations are a far cry from those in *Employees' Retirement System of Government of the Virgin Islands v. Blanford* (Opp.

---

[6] Plaintiff relies on CW5's assertion that Lowe's continued to order from Stanley because it had "problems" getting product to its regional facilities.  (Opp. 9, 17.)  But the reason is irrelevant—what matters is that CW5 *confirms* that Stanley continued to make sales to Lowe's through early 2022, reflecting ongoing demand.

[7] Plaintiff argues, without support, that the Company "induced Lowe's" by offering a 12-15% discount instead of 10%.  (Opp. 14; Compl. ¶ 64.)  But Plaintiff offers no facts to demonstrate that the alleged discount was not the result of Lowe's—a company Plaintiff admits was "4-5 times greater in size than Stanley" (Opp. 17)—simply using its size and buying power to negotiate a larger discount for a sizeable order.  Again, none of the CWs was involved in negotiating the alleged transaction, and so Plaintiff's allegations are mere speculation.

25), which detailed "efforts to deceive auditors and investors and conceal . . . excess inventory"—"discarding 'pallet after pallet after pallet'" and "orchestrat[ing] 'phony shipment[s]'".  794 F.3d 297, 301, 308 (2d Cir. 2015).  Similarly, in *Plumbers & Pipefitters National Pension Fund v. Davis* (Opp. 15-16), executives intentionally "pressure[d] retailers to increase the size of their orders or risk losing wholesale discounts", "flood[ed] the market with discounted inventory", allowed "customers to delay payment" and ignored presentations warning that these strategies "to meet financial targets [were] not sustainable".  2020 WL 1877821, at \*1-2 (S.D.N.Y. Apr. 14, 2020).[8]  Nothing like that is pleaded here—which is precisely why Plaintiff's allegations fail.

   ***Plaintiff's Allegations Regarding Items 105 and 303 Fail:***  Plaintiff attempts to argue that the Company violated Items 105 and 303 by failing to disclose alleged uncertainty and risk surrounding demand and Defendants "waived any contention those claims should be dismissed".  (Opp. 34 & n.26; Compl. ¶ 127.)  Not so.  Defendants' opening memorandum addressed all relevant arguments.  *First*, Plaintiff did not advance a separate claim regarding Items 105 or 303; they are subsumed in their deficient Section 10(b) claim.  (*See id.* ¶ 184.)  *Second*, Stanley made extensive and repeated disclosures about the risks of decreasing demand before and continuing throughout the Class Period—explicitly warning that in "a [COVID] recovery era, demand for the Company's products may decrease as focus shifts to activities outside the home".  (*See* MTD 6-7, 24.)  *Third*, Plaintiff's argument presumes Plaintiff's contentions about decreasing demand are correct but, as Defendants made clear in their initial

---

[8] *In re Scientific-Atlanta, Inc. Securities Litigation*, 239 F. Supp. 2d 1351 (N.D. Ga. 2002) is similarly inapposite.  There, plaintiffs alleged a routine practice of "channel stuffing" by "following a liberal return policy at odds with the Company's stated return policy, giving credits for warehousing, and agreeing that customers could receive product without payment", as well as fraudulent accounting practices.  *Id.* at 1355, 1359.

briefing, "[w]ithout any specific information demonstrating that the Company's actual demand was declining, Plaintiff's claim fails".  (*Id.* at 19.)

      2.  <u>None of the Challenged Statements Is Actionable as a Matter of Law.</u>

***Forward-Looking Statements:***  Plaintiff's attempt to recharacterize Defendants' statements about expectations of "continued momentum" or "growth in 2022 and beyond" as statements of then-existing fact fails because those statements include no "historical facts".[9] (Opp. 30-31.)  *See Steamfitters Loc. 449 Pension Plan v. Sketchers USA, Inc.*, 412 F. Supp. 3d 353, 362-63 (S.D.N.Y. 2019).  Additionally, these are not actionable because they were accompanied by meaningful cautionary language before and during the Class Period.  (MTD 24.)

***Puffery:***  Plaintiff's argument as to why descriptions of demand as "robust", "strong", "healthy" and "solid" are not inactionable puffery presumes, wrongly, that Plaintiff has adequately pleaded that demand was, in fact, "poor" or "weak"—which it has not.  (Opp. 32-33.) Moreover, these are precisely the sort of vague statements that are "too general to cause a reasonable investor to rely upon them".  *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012).[10]

***Opinions:***  Defendants' statements of opinion are not—as Plaintiff suggests— embedded statements of fact masquerading with "I believe".  (Opp. 28.)  Instead, they are opinions about "confiden[ce]" in growth and the ability to execute—undeniable opinions.[11]

---

[9] This is unlike *In re Bristol-Myers Squibb* (Opp. 29), which referenced specific clinical trial data.  2005 WL 2007004, at *24.  The court in that case explained that referencing the trial data "changes the meaning" of the statement to be one of fact rather than a prediction of future events.  *Id.* at *25.  That is not the case here.

[10] Plaintiff misleadingly cherry-picks language to argue that Defendants' statements do not constitute puffery. For example, Plaintiff cites *In re Williams Securities Litigation* to suggest that "statements that company would 'continue to perform' and 'deliver on our promises' were 'neither puffery nor immaterial'".  (Opp. 32 (citing 339 F. Supp. 2d 1206, 1228 (N.D. Okla. 2003)).)  But the full statement at issue in that case included specifics about the impact of its corporate debt downgrade on its business, which is nothing like Defendants' alleged statements here.

[11] Again, the cases on which Plaintiff relies are distinguishable, containing allegations of widespread practices of channel stuffing that rendered defendants' attribution of organic growth misleading.  *See, e.g.*, *Okla. Firefighters*

Tellingly, Plaintiff points only to one statement, which it characterizes as an "earnings call" where "the response was that they were not seeing a decline in demand". (*Id.*) But the *actual* statement is that the Company "will carefully watch for any impacts from a higher interest rate environment or changes in the elasticity of demand" and that management was "*confident* in our ability to execute in today's dynamic, volatile environment". (Compl. ¶ 112.) Not only does Plaintiff mischaracterize the statement, but it points to a quintessential opinion.[12] To be actionable, Plaintiff must plead that the Defendants did not believe their stated opinions.[13] It has not done so. For all of the above reasons, the alleged misstatements are not actionable.

> **B.       Plaintiff Fails To Plead Scienter.**

Plaintiff essentially concedes that it has not pleaded facts to raise a strong inference of scienter through "motive and opportunity to defraud" as the Complaint is devoid of allegations that any Individual Defendant "benefitted in some concrete and personal way". *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted).[14] Plaintiff's allegations of conscious misbehavior or recklessness

---

*Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 26 (S.D.N.Y. 2019) (alleging years-long practice of "flood[ing]" the market); *see also In re Dentsply Sirona*, 665 F. Supp. 3d at 269, 284 (alleging minimum purchase requirements leading to an "undisclosed glut of inventory"). There are no such allegations here.

[12] *See, e.g.*, *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *20 (S.D.N.Y. Sept. 21, 2021) ("We are confident in our future" is a "statement of opinion").

[13] At most, Plaintiff "relies on the beliefs and opinions of confidential witnesses", but "none of the confidential witnesses is alleged to be the 'maker' of any of the alleged misstatements, and it is the facts known to, and the intent of, the maker of the statements which is ultimately relevant." *Villare*, 2021 WL 4311749, at *20 (quotations and citation omitted). Separately, Plaintiff's attempted reliance on *Omnicare* is also misplaced. (Opp. 30.) The *Omnicare* court held that "whether an omission makes an expression of opinion misleading always depends on context". *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015). Here, that means that without a particularized pleading showing declining demand (which is absent), Plaintiff cannot establish that Defendants' failure to mention one single alleged pull-in with Lowe's rendered *any* opinion statements misleading. Defendants' statements are clearly inactionable opinion statements.

[14] Plaintiff argues that "executives had the same incentive plan predicated on performance" and that there "was also an incentive for the Company to appear to be financially strong". (Opp. 37 n.28.) But Plaintiff ignores that the law in this Circuit that "[m]otives that are common to most corporate officers, such as the desire for the corporation to appear profitable and the desire to keep stock prices high to increase officer compensation, do not constitute 'motive' for purposes of" the scienter inquiry". *ECA*, 553 F.3d at 198.

therefore "must be correspondingly greater".  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  Yet Plaintiff fails to meet this exacting standard, which requires particularized allegations of (i) "deliberate, illegal behavior" or (ii) conduct that was "'*highly* unreasonable' and constituted 'an *extreme departure* from the standards of ordinary care'".  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 573 (S.D.N.Y. 2014) (emphases added) (quoting *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)).  Nothing like that is pleaded here.

As Plaintiff acknowledges, "a claim based on recklessness" requires it to "*specifically* allege[] defendants' knowledge of facts or access to information *contradicting their public statements*".  (Opp. 34 (quoting *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (emphases added)).)  But nothing in the Complaint identifies any specific facts known to the Individual Defendants that contradict their public statements.  Instead, Plaintiff relies on vague allegations, none of which (either alone or together) support a strong inference of scienter.

*MAP Meetings:*  Allegations concerning monthly MAP meetings (and McChesney's alleged attendance) (*id.* at 35) are fatally deficient, as Plaintiff fails to identify any specific information presented at any of those meetings.  (*See* MTD 17.)  Plaintiff's focus on "the meetings' date", "location", "number of attendees", "length", "topics of discussions (*inter alia*, targets and projections), and type of presentations" (Opp. 35), misses the point.[15]  Plaintiff has failed to identify any *facts* learned at any specific meetings that *contradict* the Defendants' public statements, as would be required to raise a strong inference of scienter.[16]

---

[15] Whether Stanley "essentially acknowledged the occurrence of monthly meetings" is not only wrong—on a motion to dismiss all alleged facts are, without prejudice, presumed true solely for purposes of that motion, *see* MTD 12—but irrelevant, as Plaintiff has not identified any contrary facts discussed at such meetings.  (*See* Opp. 35.)

[16] In *Local No. 38*, CW statements of contrary information that "would have been reported to the Company's CFO in monthly meetings" failed to support an inference of scienter because "these allegations do not establish what specific contradictory information the Individual Defendants received or when they received it".  724 F. Supp. 2d at

***CW's Beliefs:***  Plaintiff argues that scienter should be inferred by the CWs' "first-hand knowledge" of declining demand.  (*Id.* at 36.)  But Plaintiff does not identify any facts to show the *Individual Defendants'* knowledge; Plaintiff does not allege any CW spoke directly to any of the Individual Defendants—let alone about an alleged decline in demand.  (MTD 32-33.)

***Point-of-Sale Data/Lowe's Link:***  Plaintiff argues that the "CWs detailed how Stanley had access to . . . sell-through data".  (Opp. 36.)  Again, these allegations are devoid of substance.  While Plaintiff alleges that "a massive Company distribution list" got a Lowe's report (*id.* (citing ¶¶ 46, 74, 84)), there are no allegations about (1) the substance of any such report, or (2) whether the "massive" distribution even included the Individual Defendants.

***The Alleged Pull-In:***  Plaintiff concedes—as it must—that pull-ins are not inherently improper, that Stanley engaged in pull-ins before the Class Period (when demand was undeniably high), and that Lowe's continued to purchase in 2022 (even after the alleged pull-in). (*Id.* at 14; MTD 20-22.)  Accordingly, there is no plausible explanation as to why a pull-in—even assuming the Individual Defendants were aware of it—would equate to knowledge of a decline in customer demand, and Plaintiff does not offer one.  (Opp. 34-35.)  Moreover, vague allegations that "instructions to pull-in orders 'came from the top'", or that other "[p]ull-ins were discussed at meetings CW2 attended in which McChesney participated" are insufficient to show that the Individual Defendants were even aware of the alleged Lowe's pull-in.  (*Id.* at 9-10.)  The allegations are not like *Stadium Capital LLC v. Co-Diagnostics, Inc.* where *defendants'* own

---

461.  Here, only CW3 is alleged to have direct contact with the Individual Defendants and does not identify a "specific report" containing information contrary to any public statements, only vague assertions that the Thursday meetings "summarized business, including demand" and that "[p]ull-ins were also discussed".  Plaintiff attempts to distinguish *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117 (D. Conn. 2007), by emphasizing irrelevant details such as the meetings' length, number of participants, and length of the PowerPoint decks.  (Opp. 32.)  In so arguing, Plaintiff concedes that it has not "reference[d] any *actual* report . . . on any *specific* date", as it must.  *See id.*  That is fatal.

statements "acknowledged [their] access to and review of sales data" contradicting public statements. 22-cv-6978 (AS), 2024 WL 456745, at *6 (S.D.N.Y. Feb. 5, 2024). (Opp. 37.) Nor is it anything like *Blanford* (*id.* at 36), which involved both detailed allegations of "phony shipments" and large sales of "stock at opportune moments throughout the Class Period at significant personal gain". 794 F.3d at 301, 308. Plaintiff's reliance on *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, No. 2011 WL 494753 (D. Conn. Feb. 7, 2011) is also misplaced. There, unlike here, the plaintiffs *specifically* identified "daily meetings" discussing "the failure to meet production goals" and suspicious sales of "thousands of shares of their personally-held common stock". *See id.* at *8. Plaintiff's case should thus be dismissed for failure to plead scienter.[17]

## II.  PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 20(a).

Dismissal of Plaintiff's Section 10(b) claims requires dismissal of the Section 20 claims. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). (MTD 36.)

### CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiff's Complaint should be dismissed in its entirety, with prejudice, and without leave to replead.[18]

DATED this 5th day of April 2023

**CRAVATH, SWAINE & MOORE LLP**

By:      */s/ Timothy G. Cameron*
          Timothy G. Cameron (*pro hac vice*)
          Lauren M. Rosenberg (*pro hac vice*)

---

[17] Plaintiff wrongly asserts that its supposed "core operations" allegations "buttress[]" an "inference of scienter". (Opp. 37.) But Plaintiff ignores caselaw making clear this doctrine is on shaky ground. (*Id.* at 34 n.9.) The Second Circuit recently observed that it has not yet determined "whether, and in what form, the 'core operations' doctrine survives as a viable theory of scienter" in light of the passage of the PSLRA. *In re Renewable Energy Grp.* No. 22-335, 2022 WL 14206678, at *3 n.4 (2d Cir. Oct. 25, 2022).

[18] Plaintiff argues that it should be granted leave to amend its Complaint if this Court grants any part of Defendants' Motion to Dismiss. (Opp. 40.) But where Plaintiff has already amended once and gives no indication of how it intends to cure the deficiencies raised by Defendants, any further repleading would be futile. *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275 (2d Cir. 2006) (affirming denial of leave to amend where plaintiff failed to "indicate[] to the district court how the complaint might be amended to cure its deficiencies").

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Tel. 212-474-1059
tcameron@cravath.com
lrosenberg@cravath.com

**SPEARS MANNING & MARTINI LLC**
Joseph W. Martini
Federal Bar No. ct07225
Leslie A. Cahill
Federal Bar No. ct31242
2425 Post Road, Suite 203
Southport, CT 06890
Tel. 203-292-9766
jmartini@spearsmanning.com
lcahill@spearsmanning.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

<u>/s/ Janna Eastwood</u>
Janna Eastwood
