```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

```
_____
NARESH VISSA RAMMOHAN,           )
Individually and on behalf of all )
others similarly situated,        )
              Plaintiffs,         ) No: 3:23-cv-00369-KAD
                                  )
       v.                         ) September 3, 2025
STANLEY BLACK & DECKER, INC.,     )
ET AL.,                           )
              Defendants.         ) 3:08 p.m.
_____)
                           Brien McMahon Federal Building
                           915 Lafayette Boulevard
                           Bridgeport, CT 06604
```

```
                  TELEPHONIC STATUS CONFERENCE
```

```
B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.
```

```
Courtroom Deputy:              Official Court Reporter:
Kristen Gould, Esq.            Tracy L. Gow, RPR

                   Chambers: 203.579.5522
```

A P P E A R A N C E S:
For Plaintiffs:
      LAWRENCE D. LEVIT, ESQ.
      Abraham, Fruchter & Twersky, LLP
      450 Seventh Avenue, 38th Floor
      New York, NY 10123
      212-279-5050
      Email: llevit@aftlaw.com

      JESSICA M. CASEY, ESQ.
      Scott & Scott, LLP
      156 South Main Street
      P.O. Box 192
      Colchester, CT 06415
      860-537-5537
      Email: jcasey@scott-scott.com

For Defendants:
      TIMOTHY CAMERON, ESQ.
      LAUREN ROSENBERG, ESQ.
      Cravath, Swaine & Moore, LLP
      Two Manhattan West
      375 Ninth Avenue
      New York, NY 10001
      212-474-1000
      Email: tcameron@cravath.com
             lrosenberg@cravath.com

Also present:
      ANASTASIA LACINA, ESQ., Law Clerk

(Teleconference commences, 3:08 p.m.)

THE COURT:  All right.  Good afternoon, everybody. This is Judge Dooley.  We are on the record in the matter of *Rammohan v. Stanley Black & Decker*.  Docket Number is 23-cv-369.

Let me ask who I have on the line for the Plaintiffs.

MR. LEVIT:  Lawrence Levit from Abraham, Fruchter and Twersky.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MS. CASEY:  Good afternoon, Your Honor.  Jessica Casey from Scott & Scott, local counsel.

THE COURT:  Good afternoon.

And who do I have for the Defendants?

MR. CAMERON:  Good afternoon, Your Honor.  This is Timothy Cameron of Cravath, Swaine & Moore, LLP, on behalf of Defendants.  And with me, also on the phone, is my partner, Lauren Rosenberg.

And the Court, I think, very kindly excused our local counsel from appearing today.

THE COURT:  I did.  Okay.  Good afternoon.

As you saw from the scheduling order, the decision we had been waiting for at the Circuit was issued, I guess a week or so ago -- August 27th, actually.  And we had previously discussed whether it made sense for me to hold off

on issuing a decision on the pending Motion to Dismiss until the decision was written, in light of some of the similarities to the allegations in the two cases.

What I wanted to do this afternoon -- and perhaps you-all have had a conversation about areas where there might be agreement as to the impact of the ruling, areas where there might remain disagreement as to the impact of the ruling, whether the parties think it would be helpful to just have oral argument on what's already been briefed as well as the decision, whether the parties want supplement -- an opportunity to put together supplemental briefing -- I would give you that, as well.

So, it was really just a -- I would just like to hear from you-all as to what the path forward looks like, the extent to which there remain disagreements and what you would propose.

And I guess, Attorney Levit, I would start with you.

MR. LEVIT:  Thank you, Your Honor.  We did have a conversation with Defendants' counsel earlier today.  We did not reach an agreement.  Plaintiffs would like the opportunity to file an amended complaint.  We believe that's the best way forward.  It's the most efficient way.  There hasn't been a ruling in this case yet on Defendants' motion.

The Second Circuit decision certainly wasn't available at the time Plaintiffs drafted their complaint, and

it's certainly a relevant case here.

THE COURT:  Okay.  Attorney Cameron, what is the Defendants' view at this point?

MR. CAMERON:  Good afternoon, Your Honor.  So, we spoke really only 20 minutes before this conference when the Plaintiffs reached out, and that was the first time they raised the suggestion of repleading the complaint.

As I indicated to Mr. Levit, I anticipated that we would not consent.  And I was able to make contact with the company, but not the individual Defendants in the 20 or so minutes that I had.  And the company, you know, confirmed my suspicion that their not willing to consent to a repleading of the complaint at this point.

And if the Court would permit me just to put a little bit of context around that.  This case was filed back on March 24th of 2023.  And when we put the original stipulation in place, we did so explicitly to give Lead Plaintiff/Lead Counsel a -- beyond a full and fair opportunity to put their best foot forward in pleading the amended complaint.

And they actually had, from the date that the original complaint was filed, more than six months to prepare the amended complaint; and, indeed, more than four months, as I understand it, from the time that Lead Plaintiff and Lead Counsel were appointed, to prepare and draft the amended

complaint.

And that four months included -- I think we agreed originally upon 90 days.  And then the Plaintiffs actually sought an extension, which the Court granted, to, you know, get us to the full period of time.

So, they had, you know, a tremendously fair and full opportunity to plead the complaint, you know, in the best way that they thought represented the interest of the Class.  And it was for that reason that we moved to dismiss the complaint with prejudice.

When Mr. Levit raised this, we asked sort of two things.  I mean, first, What was the reason for the amendment, and was there something specific that was driving the amendment that would be the focus of the repleading?

And the first point, Your Honor, is that our view is that the *Peloton* decision doesn't so much change the case law that is addressed in the subject of our Motion to Dismiss as confirm it.  It confirms, you know, that the -- in order to survive a Motion to Dismiss, you need to be able to plead, for example, that a particular statement was false and misleading at the time it was made or is not puffery.  You need to plead that with particularity, and you need to plead something that is not protected as a forward-looking statement accompanied by meaningful cautionary language.

The Second Circuit's decision in *Peloton* confirms

the principle in our Motion to Dismiss and the basis upon which we say that all of the statements in their complaint should be dismissed.  And, as such, doesn't represent something new that we think warrants an amendment to the complaint.

In addition, Mr. Levit, when we asked him, did not identify for us, or was not able to identify for us, anything in particular or anything specific which he contended warranted a repleading in terms of factual allegations or otherwise.  It's simply that they wanted to be able to take a further look at the *Peloton* case.

So, for those reasons, Your Honor -- and we'd be happy, to, you know, address it any which way the Court might desire, but we don't believe, respectfully, that repleading, you know, is warranted here.

THE COURT:  Okay.  Well, this was not the dispute I anticipated.

MR. LEVIT:  Your Honor, may I respond?

THE COURT:  Sure.

MR. LEVIT:  This is Lawrence Levit.  It wasn't what we anticipated either.  The situation has certain -- while Mr. Cameron goes back to the time we drafted the complaint, the situation has certainly changed with the *Peloton* decision.  Even the *Peloton* Second Circuit decision didn't follow everything the District Court said, and the Second

Circuit decision upheld various statements that were in the complaint.

All we're seeking is the opportunity to look to that decision and make sure our complaint complies with it.

THE COURT: I guess that's where I have a little bit of confusion. If -- it's true that *Peloton's* agreed with certain aspects of the District Court, disagreed with certain aspects of the District Court. I'm not sure I follow that the logical next step is to amend the complaint again.

I'm not sure I understand why the parties arguing to me the import or impact of the *Peloton* decision on the complaint that is already the subject of the Motion to Dismiss.

Can you flesh that out for me, Attorney Levit? Because it's just -- it's one more case to throw into the mix. It's not the end-all and be-all of what a -- what these causes of actions have to include. I thought we should wait for it because I thought the allegations overlapped enough that we would probably get some guidance. Whether the two of you or whether the parties agree as to what that guidance should be or what the outcome should be in this case might engender, you know, further argument.

So I guess I'm not following the, well, now I have a decision that will allow -- which suggests to me that I should amend my complaint.

That's a disconnect for me.

MR. LEVIT:  Well, the reason, Your Honor, is -- there are a few reasons.  One is we're looking at it in the most efficient way possible.  This decision wasn't available previously when the complaint was drafted.  The Second Circuit certainly has spoken on issues that are not necessarily the same -- and we think there are distinguishing factors here -- but it's certainly a close decision that's relevant to our case.

Typically, in these situations, leave is granted to amend if the Court were to dismiss all or parts of the case.  So this is seeking to do something more efficiently, where we be allowed to amend at this time rather than go through that procedure.

THE COURT:  So if you were to -- I mean, candidly, this is not something I'm going to decide here this afternoon on the phone.  If you were to file a motion for leave to amend and identify all the reasons that you wish to do that, Attorney Cameron, would your opposition be procedural, like it's too late, or would it be futility?

What -- which would you be relying on?

MR. CAMERON:  Yes.  Thank you, Your Honor.  And I actually think probably both because, you know, the case under Rule 15 is, of course, whether the interests of justice so require.

And, here, as I think the Court has rightfully pointed out, the *Peloton* decision is obviously one case, you know, in -- among many that speak to what is required for pleadings -- to file a Motion to Dismiss.  And we appreciated the Court inviting us to provide our views on the relevance and impact of that case to the current complaint as part of the, you know, the pending Motion to Dismiss.

And I think, to answer your question, Your Honor, the first and most important point is futility.  There's no -- nothing that has been suggested by the Plaintiff, other than simply a desire to take a look at a new case, that suggests that they will, in fact, be able to remedy any of what we believe are fundamental, substantive defects in the current pleading of the complaint.

So they haven't, you know, identified anything that would change the outcome of the Motion to Dismiss, which we believe, under *Peloton*, just simply reinforces, you know, the case law that we described in our Motion to Dismiss pleading.

And I could go into that in more detail.  But the fact that they haven't identified, just as one example, even a single document that supports their allegation, shows that they both have not demonstrated that a single statement was false and misleading when it was pled, or pleaded with particularity anything that would support their claims, as was required under the case law pre-*Peloton* and as is

required under the case law post-*Peloton.*

And that's even before we get to something like scienter, which, you know, I think is a independent dispositive basis to dismiss this complaint, quite apart from the issues that are addressed, you know, by the *Peloton* decision, as noted by Judge Newman in his separate opinion.

The second point, however, Your Honor, is, you know, justice here is the actual interest of the Defendant.  We gave the Plaintiffs deliberately all the time that they might have required in order to put their best foot forward.  And as I noted before, that was more than four months post-appointment of Lead Plaintiff and Lead Counsel.

And since that time, not only the company, but also the individuals whom I represent, have been the subject of pending securities litigation against them personally, which, of course, has an impact.

And, so, against that basis, there is no -- I think justice requires that the motion be adjudicated against the complaint that they were allowed to plead, particularly in a circumstance where they haven't identified anything that would change the pleading other than simply the case that was issued by the Second Circuit.

THE COURT:  Well, Attorney Levit, obviously, there's not going to be an agreement in terms of an amended complaint.  What would be your request if it is -- if you, in

fact, wish to pursue an amended complaint, as opposed to just briefing the impact of the *Peloton* decision on the pending Motion to Dismiss and the pending operative amended complaint, what -- what is your proposal?

Because if you are going to move to amend the complaint, you have to file, obviously, the redlined version that, I presume, will show changes that are adjustments in light of *Peloton*. I have obviously no -- I'm not weighing in on the question. There was an alternative argument regarding scienter. I'm not going to weigh in on that, and I'm not sure *Peloton* speaks to that.

But, procedurally, what would you propose?

MR. LEVIT: If Your Honor would want us to -- want the Plaintiffs to file a Motion to Amend, showing the redlined version of an amended complaint, we'd request, I believe, about 60 days from today's date to file that motion with the amended complaint.

THE COURT: Well, first of all, it's not what I want. It's what our rules require if there's going to be a Motion to Amend. And if there's not going be an agreement, then it has to be by motion.

Attorney Cameron.

MR. CAMERON: Your Honor, I agree. I think it would need to be briefed. We would certainly like the opportunity to oppose that motion. And, again, I haven't had a chance to

confirm that with the individuals, but I do anticipate that that would be their view, as well.

As to the schedule, we'll -- we'll proceed as the Court sees best.

You know, I don't think, for the reasons that I outlined, that a lengthy period of time is either required or warranted, you know, to talk about the *Peloton* decision.  And so, you know, if they were to proceed with such a motion, I think it should be done expeditiously.  But, frankly, we don't think that even that is required, and we should proceed to address the Court's original request, which was discussing the application of whether -- of the *Peloton* decision on the current complaint.

THE COURT:  All right.  Well, I guess I will leave to the two of you to have those -- continue to have those conversations.  And that is obviously with -- once Mr. Cameron is able to reach his individual clients.

It does not -- I appreciate, Attorney Levit, that the goal here was efficiency, but it just does not strike me as the most efficient way to proceed if the amended complaint is itself going to be the subject of briefing or -- and if I'm having a futility discussion in the context of a motion to amend a complaint, I'm really deciding what would be essentially the motion to dismiss the next amended complaint.

I mean, the layers of procedural complexity add, I

think, inefficiencies, but I understand why both sides wish to proceed in this fashion.

Attorney Levit, I will candidly tell you I'm not sure what an amended complaint would look like in light of *Peloton*, but I guess I will leave that to you in the first instance. And if the amended complaint is only going to be -- I should say if the second amended complaint is only an amendment to address what is discussed in *Peloton*, it's also not clear to me why 60 days is required.

MR. LEVIT: Well, part of the reason, Your Honor, is there are a number of religious holidays in October which takes away time for -- for our drafting. So we were trying to reach a schedule that would accommodate both us and, what I proposed to Defendants assuming that they were going to file a Motion to Dismiss, a schedule that would accommodate their needs, as well.

THE COURT: Yeah. Let me ask --

(Indication of a caller exiting call.)

THE COURT: I don't know who we just lost.

Attorney Cameron, you still there?

MR. CAMERON: I am, Your Honor. I'm still here.

THE COURT: Okay. In terms of strictly efficiency, if -- if we're going to be litigating the same issues either in a Motion to Amend, which includes futility discussion, or those issues you anticipate being renewed if I allow an

amended complaint in a motion to dismiss, what -- let me just -- what do you think would be most efficient in terms of all counsel and the Court's time, in terms of getting those issues teed up and decided?

MR. CAMERON:  Your Honor, this is Tim Cameron.  I think -- without prejudice in any way to our, you know, opposition to a further amendment here, you know, I think what Mr. Levit has proposed is an amendment purely to address the application of the *Peloton* decision, as you referenced a moment ago, Your Honor.

And, frankly, I think if anything were to change our view and probably inform the way forward, it's probably seeing what that looks like.

You know, I understand the Court's concern, because, I think, probably like Your Honor, I would rather avoid another, you know, complaint and another full round of Motion to Dismiss briefing with the cost and delay that would just naturally come with that process when the Plaintiffs have had the opportunity to plead their complaint and, frankly, have not yet identified to the Court or to the Defendants what it is about *Peloton* that justifies amendment.

I think -- and I'm trying to think of a way that will make this easier on the Court.  Maybe what makes sense -- and I'm really just sort of thinking out loud -- is that we have a conversation with the Plaintiffs over the next

week to see if we can chart a path forward.  If we can't, then I think, you know, we could advise the Court that -- that we continue to oppose, you know, amendment.

And at least then we can see where that stands and perhaps come back before Your Honor.  Not the perfect solution, but I'm trying to think of a way that might help move this along.

THE COURT:  Yeah, I think -- I mean, I understand Attorney Levit's idea that this might be more efficient.  And I can certainly see how it could be and it might not be.

My immediate concern -- and, Attorney Levit, you can tell me if I'm wrong -- is that ordinarily when a Motion to Amend is filed, there is an indication as to whether or not there's an agreement, and that necessarily -- or I think pretty commonly -- you tell me if I'm wrong -- involves sharing the proposed amended complaint in advance of the filing.

And since you have indicated that you believe it will take 60 days to get that proposed amended complaint drafted, I don't see -- I don't see how, under those circumstances, in short order, as proposed by Attorney Cameron, we can figure out if there -- or you can figure out if there's going be an agreement.

Attorney Levit, do I have -- do you agree with that assessment?

MR. LEVIT:  Well, Your Honor, I'm not sure that amended complaints are always shared with the other side, but we're more than happy to have further discussions with Defendants in the next week, as Mr. Cameron suggested, to try to reach an agreement.

THE COURT:  And do you think -- I mean, I'll let you guys have those conversations.  I certainly don't need to be party to them.  But I think that what I'm hearing is that this discussion is necessarily, at least from the Defendants' standpoint, going to have to include an explanation as to what the *Peloton* decision will inform by way of an amended complaint.

I'm happy -- well, let me -- let me just back up.

Why don't I schedule another call for two weeks out.  If you-all have identified a procedurally efficient path to have your -- whatever dispute remains outstanding resolved, I will be all ears.  But absent an agreement as to what that procedure looks like, I really don't see any option other than having the Plaintiff file their Motion to Amend, having the Defense oppose the Motion to Amend; and whatever issues are teed up in that process, whether they are duplicative of the 12(b)(6) analysis because there's futility argument, that will just sort of be what it is.

If there are additional arguments under Rule 15, there are prejudice arguments, whatever it might be, I -- but

18

it seems to me that, absent an agreement, and one that doesn't strike my as obvious -- because if I could figure out an agreement that would seem obvious, I would suggest it to everybody -- I think that we are on track for full briefing, and whatever issues get teed up, get teed up.

Because -- Attorney Levit, do you see any alternative to what I have suggested, starting with a phone call two weeks from now to see what, if anything, can be agreed upon?

MR. LEVIT:  I think the parties discussing it is probably the best way to proceed.  If there was not a Motion to Amend, is Mr. Cameron suggesting a different procedure?

THE COURT:  I could be wrong.  Attorney Cameron, if I understood, you would have preferred just to brief the impact of *Peloton* on the current Motion to Dismiss and the current operative amended complaint?

MR. CAMERON:  Well, yes, Your Honor.  I mean, my view, Your Honor, consistent with the fact that we do not consent to amendment, is that, you know, the Court, at its discretion, should consider the application of the *Peloton* case to the existing complaint, as it's already indicated, and then proceed to a ruling on the presently briefed Motion to Dismiss.

But Mr. Levit, I -- if he chooses to file a Motion to Amend, you know, so that the Court can consider leave

under Rule 15, you know, then, at that point, we'll brief it.

I think the course that you outlined, Your Honor, makes sense. But, obviously, you know, nothing that I've said should, I think, sort of derogate from the position that we believe that amendment is not required and should not be permitted and that the Motion to Dismiss should be granted on the present complaint.

THE COURT: Okay. I just -- I'm not comfortable saying to the Plaintiffs -- or deciding the question of amendment on this call. So, absent that, I think that we really should have briefing if no agreement can be reached.

Attorney Levit, does that answer your question?

MR. LEVIT: Yes, it does. Thank you, Your Honor.

THE COURT: Okay. All right. So I will -- what's today? The 3rd. I will put something on the calendar for the 15th, 16th, 17th, somewhere around there -- probably be another late afternoon phone call -- to check in with the parties. And if there is not an agreed-upon path forward, I will set a -- I'll set deadlines for whatever. If it's going be a Motion to Amend, we'll set those deadlines and that briefing schedule at that time.

MR. CAMERON: Your Honor, this is Tim Cameron. With apologies, just to flag it. I know I'm going to be on a plane most of the 15th. Sorry. Just to flag that for scheduling purposes.

20

THE COURT:  You said most of the 15th?

MR. CAMERON:  Correct.  Monday, the 15th.

THE COURT:  Okay.  We won't schedule it for the 15th.  Are there any other dates or times that counsel knows they are not available that week?

MR. LEVIT:  No, Your Honor.

THE COURT:  So I'll find time on my calendar.  We will get that docketed, and we'll see where we go on that date.

Any -- that was sort of my agenda for this afternoon.  Was there anything the Plaintiff wanted to bring to my attention?

MR. LEVIT:  Nothing further, Your Honor.

THE COURT:  Okay.  And for the Defense?

MR. CAMERON:  Nothing further, Your Honor.  Thank you very much.

THE COURT:  Okay.  All right.  Thank you, Counsel.  We'll talk to you in a few weeks.

MR. LEVIT:  Thank you, Your Honor.

MR. CAMERON:  Thank you, Your Honor.

MS. CASEY:  Thank you, Your Honor.

(Teleconference concludes, 3:38 p.m.)

21

C E R T I F I C A T E

RE: *Rammohan, et al. v. Stanley Black & Decker, et al.*
Civil No. 3:23-cv-00369-KAD

Telephonic Status Conference
September 3, 2025


     I, Tracy L. Gow, RPR, Official Court Reporter for the

United States District Court, District of Connecticut, do

hereby certify that the foregoing pages, 1 through 20, are a

true and accurate transcription of my shorthand notes taken

in the aforementioned matter, to the best of my skill and

ability.


                         /s/   TRACY L. GOW
                         Official Court Reporter
                         U.S. District Court
                         915 Lafayette Boulevard, Room 216
                         Bridgeport, Connecticut 06604
                         (203) 910-0323