**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NARESH VISSA RAMMOHAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Case No. 3:23-cv-00369 (KAD) |
| v. | |
| STANLEY BLACK & DECKER, INC., DONALD ALLAN, JR., JAMES M. LOREE, AND LEE MCCHESNEY, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' RENEWED MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

February 19, 2026

**ORAL ARGUMENT REQUESTED**

Far from saving its defective claims, Plaintiff's Opposition confirms why the Second Amended Complaint ("SAC"[1]) should be dismissed with prejudice. Despite a *third* opportunity to plead its claims with the specificity required by the PSLRA and Rule 9(b)—with knowledge of the defects pointed out by Defendants in their prior motion to dismiss—Plaintiff still has failed to overcome two fundamental and fatal deficiencies: (1) it cannot point to *a single document, meeting, communication, or discussion* that specifically shows falling demand in late 2021 or early 2022—let alone "plummeting demand" or that "inventory increases were being driven primarily by weakening demand" (SAC ¶¶ 5, 10); and (2) it has failed to allege scienter for any Individual Defendant or Stanley Black & Decker, Inc. ("Stanley" or the "Company") because it has not, and cannot, specifically allege any Defendant's knowledge of facts or access to information contradicting their public statements at the time they were made.

Plaintiff's case is based on nothing more than the CWs' vague assertions of declining demand at some indeterminate point in late 2021 and the alleged "pull-in" sale to Lowe's, but both are inadequate to state a securities law violation.[2] Plaintiff's pleading with regard to allegedly declining demand in late 2021 is simply a series of generalized, unsupported, and speculative assertions, lacking any requisite specificity. It is telling that Plaintiff and the CWs do not provide *any specificity* about allegedly slowing demand for particular Stanley products, business segments, or customers *at any point in time* in late 2021, despite their obligation to do so. That alone renders Plaintiff's allegations insufficient and implausible. Plaintiff's reliance on

---

[1] Unless otherwise defined, capitalized and abbreviated terms have the same meaning as in Defendants' opening Memorandum. "MTD" refers to Defendants' Memorandum of Law (Dkt No. 81.1), and "Opp." or "Opposition" to Plaintiff's Memorandum of Law in Opposition (Dkt. No. 82).

[2] Plaintiff asserts that Defendants "do not deny [the alleged "pull-in"] occurred; that it was as much as $200 million; that it was for an unprecedented amount and a historic amount for Stanley; and that the Individual Defendants knew and approved of it." (Opp. 19.) That is incorrect; Defendants explain precisely why Plaintiff's factual allegations related to the purported pull-in and any Individual Defendants' knowledge of the purported pull-in are insufficient. (MTD 10-13, 31-32.) Moreover, as Plaintiff is well aware, factual pleadings are not contested on a Rule 12(b)(6) motion. Defendants reserve all rights to do so, should the case proceed.

1

the purported "pull-in" to Lowe's does nothing to overcome these failures, particularly given that Plaintiff concedes, as it must, that pull-ins are not improper, are an ordinary business practice (including for Stanley), and that Lowe's *continued to order* from Stanley in 2022.  Consequently, nothing about the alleged pull-in indicates that demand was declining, that any of Defendants' statements were false or misleading when made, or that any Defendant had the requisite scienter.

Plaintiff attempts to twist the Second Circuit's recent decisions in *City of Hialeah Employees' Retirement System v. Peloton Interactive, Inc.*, 153 F.4th 288 (2d Cir. 2025) and *Gimpel v. The Hain Celestial Group, Inc.*, 156 F.4th 121 (2d Cir. 2025) to try to save its claims, but the truth is the opposite:  the specific alleged misstatements that survived in both *Peloton* and *Hain* involved far stronger and more particularized allegations of fraud and scienter than Plaintiff has set forth in the SAC, and those cases therefore illustrate why Plaintiff's claims here are inadequate as a matter of law and should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFF'S SECTION 10(b) & RULE 10b-5 CLAIMS FAIL.

#### A.    Plaintiff Fails to Allege Facts Demonstrating that Any Challenged Statement Was False or Misleading When Made.

Plaintiff's failure to identify *any* specific document, meeting, or communication contradicting Defendants' public statements is fatal to its claims.  Under Rule 9(b), Plaintiff cannot rely on an "unsupported general claim of the existence of confidential company sales reports" that supposedly support their allegations.  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996); *see also Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (dismissing complaint that "fails to specify exactly what information was contained in the report or how said information 'contradicted Defendants' public statements'").  But that is all Plaintiff relies upon

here—while it alleges the *existence* of MAP and Executive meetings, point-of-sale data, and other internal documents and reports, it fails to offer *any specifics at all* about anything allegedly discussed in a particular meeting or document or data set that was contrary to Defendants' public statements when made.  (*See* SAC ¶¶ 48-55.)  Plaintiff's failure adequately to plead falsity warrants dismissal of all its claims.  *See San Leandro*, 75 F.3d at 812-13.

Plaintiff attempts to overcome this defect by relying on its CW allegations.  (Opp. 13-14.)  But that, too, fails.  *First*, the CW allegations are nothing more than broad, unsupported assertions, lacking in any specificity or detail that would suggest they are either credible or plausible.[3]  (*See, e.g.*, SAC ¶¶ 64-65, 69-73, 75-78.)  Such pleading is inadequate.  *See Damri v. LivePerson, Inc.*, 772 F. Supp. 3d 430, 453 (S.D.N.Y. 2025) (finding complaint's reliance on CW allegations "problematic," including because CW allegations "are general in nature and, with limited exceptions, devoid of details lending themselves to corroboration").  *Second*, the CW allegations are not only uncorroborated by other allegations in the SAC, but are inconsistent with—and actually undermined by—Plaintiff's allegations regarding ongoing demand for Stanley's products in Q1 2022.  Plaintiff alleges that several CWs stated that the alleged Q4 2021 Lowe's pull-in was executed to hide falling demand (SAC ¶¶ 58, 64), but then admits that Lowe's "continued to order from Stanley in the first quarter . . . of 2022" (*id.* ¶ 67)[4]—directly

---

[3] The CW allegations purporting to describe declining demand throughout the SAC—including that it was "evident" (SAC ¶¶ 64, 91), "rampant" (*id.* ¶ 69), "major" (*id.* ¶ 71), and "not there" (*id.* ¶ 75)—are so vague and conclusory as to be meaningless.  The lack of specificity is particularly telling considering the CWs occupied positions that should have given them visibility into the specific information Plaintiff claims exists but was unable to allege. (*See, e.g.*, *id.* ¶¶ 33-37 (CW1 was global demand planning manager; CW2 was Director of Supply Chain Operations; CW3 was Vice President of Global Planning).)  The SAC even references point-of-sale data that Stanley purportedly had access to, without including *any* details about what that data showed.  (*Id.* ¶¶ 43, 67, 77.)  The absence of that information only further undermines Plaintiff's credibility.

[4] Lowe's disclosures reflect that Lowe's, too, continued to experience strong demand in the relevant product segments through Q1 2022, which corroborates Stanley's reported demand and the normal nature of Lowe's Q4 2021 purchases.  (*See* Rosenberg Decl. Ex. 4 at 13.)  Lowe's strong performance during this period also undermines and renders irrelevant the CWs' vague allegations that demand was declining industry-wide.  (*See, e.g.*, SAC ¶ 69.)

3

contrary to its theory that the alleged pull-in frontloaded sales that Lowe's "*otherwise* was expected to purchase during 2022" (*id.* ¶ 58 (emphasis added)). "[I]nconsisten[cies]" of this kind led the Second Circuit to conclude that the *Peloton* plaintiffs had not adequately pleaded falsity for numerous alleged misstatements, *see* 153 F.4th at 296—as is true here.

Plaintiff's reliance on *Hain* (*see* Opp. 3-5, 17-19, 22, 33) is unavailing, as the allegations here are a far cry from that case. In *Hain*, the defendants allegedly engaged in channel-stuffing by offering significant cash incentives, large discounts, extended payment terms, and an absolute right to return unsold product (leading to massive returns). 156 F.4th at 130-31. The company's chief operating officer then "smoothed out" and "chang[ed]" the company's financials, leading to improper revenue recognition, restated financial statements, an SEC investigation and consent decree, and ultimately the terminations of seven executives. *Id.* at 131-33, 149. The detail of those allegations both corroborated the CWs' claims, leading the court to find them credible, and underpinned a finding that the plaintiffs had adequately pleaded falsity. *Id*. at 139. In contrast, none of that is present here: no restatements, no investigations, no cash incentives, no extended payment terms, and no absolute rights to return.[5] Instead, Plaintiff relies solely on the mere fact of the pull-in itself, despite admitting that pull-ins are not an unusual business practice (*see* SAC ¶ 57), and are not, without more, improper. *See Greebel v. FTP Software, Inc.*, 194 F.3d 185,

---

Plaintiff points to a Lowe's forecast that its sales could decline by 0-3% for full-year 2022 and argues this "is consistent with the SAC's allegations that demand for Stanley's products was weakening" (Opp. 27-28.) But that ignores that Lowe's reported "strong results" for "Building Products"—the relevant segment for Stanley. (Rosenberg Decl. Ex. 4 at 13.) As to Plaintiff's reliance on Home Depot's customer transaction volumes (Opp. 27), Plaintiff ignores that Home Depot's net sales *increased* in every relevant quarter, and does not (and cannot) explain how documents showing Home Depot had *increased sales* support its theory of declining demand. (Levit Decl. Ex. F (showing Q4 2021 net sales increased 10.7% year-over-year); Ex. G (showing Q1 2022 net sales increased 3.8% year-over-year); Ex. H (showing Q2 2022 net sales increased 6.5% year-over-year).)

[5] The sole incentive allegedly offered to Lowe's as part of the pull-in was an additional 2-5% discount. (SAC ¶ 59.) Not only are volume discounts normal, but a minor discount in this range is far afield from the extreme incentives offered in *Hain*, and cannot plausibly explain the disproportionately large volume of inventory Plaintiff alleges Lowe's was somehow induced to purchase. (*Id*. ¶¶ 59-60.) Plaintiff's allegations are not plausible.

202 (1st Cir. 1999) ("There is nothing inherently improper in pressing for sales to be made earlier than in the normal course[.]"); *see also In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1381 (N.D. Cal. 1995). *Hain* thus demonstrates that Plaintiff's allegations here—including the uncorroborated statements of the CWs—are inadequate to plead falsity or to meet the specificity requirements of Rule 9(b) and the PSLRA.[6]

Plaintiff's argument about "organic growth" is also unavailing. (Opp. 17.) Stanley's disclosures clearly and repeatedly defined "organic growth" as "total current and prior year sales less the impact of companies acquired and divested in the past twelve months." (*See* Rosenberg Decl. Ex. 14 at 7; *see also* Rosenberg Decl. Ex. 6 at 40.) Accordingly, revenue from a pull-in properly qualifies as organic growth, because a pull-in does not involve growth attributable to companies acquired and divested. *See also El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F. Supp. 3d 1296, 1339 (D. Colo. 2023) ("[O]rganic growth describes growth stemming from a company's normal business operations" rather than "from mergers with or acquisitions of other preexisting businesses"); *Cypress*, 891 F. Supp at 1380-81.

Plaintiff also argues that Stanley's risk disclosures were misleading because they were allegedly framed as "hypothetical" even though some of the risks "had already materialized." (Opp. 25.) But that too is false. The Company's risk disclosures repeatedly warned that COVID-19 "***has caused, and may continue to cause***, significant reductions in demand or significant volatility in demand for certain of the company's products." (MTD 19, 20 n.11, 21 (citing Rosenberg Decl. Ex. 9 at 10, Ex. 17 at 12 (emphasis added)).) Contrary to Plaintiff's allegations, the Company's risk disclosures plainly disclosed actual, not just hypothetical, risk.

---

[6] For the reasons set forth in Defendants' MTD, *Peloton* is also of no help to Plaintiff—indeed, that decision supports complete dismissal of this case. (*See* MTD 10-11.) Plaintiff's arguments to the contrary (Opp. 3, 4, 19, 24, 26, 32-33) are wrong because Plaintiff fails to allege decreasing demand with the particularity required.

Plaintiff has failed adequately to plead that any of the alleged misstatements were false or misleading when made, and has failed to meet the particularity requirements of Rule 9(b) and the PSLRA.[7] That alone warrants dismissal of all of Plaintiff's claims.

**B.      None of the Challenged Statements Is Actionable as a Matter of Law.**

*Forward-Looking Statements:*  Plaintiff does not address—and therefore concedes—the forward-looking nature of Statements 2, 7-9, 13-15, 18-19, 21, 25, 28, 32-33, 35, 37, 40-42, 47-48, 51, 54-55, 58, 63-65, 69, 72-74, 77 and 81.  (*See* Rosenberg Decl. Ex. 1; *see also* MTD 17-22); *see also Rosado v. Potter*, 2007 WL 30864, at *8 (D.  Conn. Jan. 4, 2007), *aff'd*, 295 F. App'x 423 (2d Cir. 2008) (finding arguments not addressed to be conceded).[8]  Instead, Plaintiff cherry-picks portions of three alleged misstatements and ignores that the remaining portions *do* contain forward-looking language.  (*See* Opp. 28-30.)  Plaintiff concedes that the forward-looking portion of such "mixed statements" *can be* covered by the safe harbor.  (*Id.* 28.)  Moreover, Plaintiff conveniently omits that Defendants have identified multiple additional grounds for why any non-forward-looking portions of those alleged misstatements are inactionable.  (*See* Rosenberg Decl. Ex. 1, Statement Nos. 17, 20, 38.)

*Opinions:*  Defendants' statements of opinion are not—as Plaintiff suggests—embedded

---

[7] As a last-ditch effort to salvage its claims, Plaintiff submitted a notice of supplemental authority on February 17, 2026 describing two out-of-circuit cases (Dkt. No. 83), both of which had far more detailed factual allegations than Plaintiff's bare allegations here.  *See In re e.l.f. Beauty, Inc. Sec. Litig.*, 2026 WL 296451, at *2-3 (N.D. Cal. Feb. 4, 2026) (crediting specific allegations that demand was "roughly 12% below" Elf's internal projections in specific months, and that Elf's CEO went on a television program and made misleading statements about the business being strong to specifically rebut an industry report detailing Elf's declining demand); *Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc*, 2026 WL 292424, at *5-7 (9th Cir. Feb. 4, 2026) (detailing 300-500 shipping containers being left unreported, the company renting additional warehouses to store excess inventory, and inventory being left disorganized on floors to support allegations that defendants' risk disclosures were insufficient because demand was already falling).  Those cases only demonstrate the inadequacy of Plaintiff's pleading here.

[8] Plaintiff also wrongly contends that the cautionary language was ineffective to invoke the safe harbor because "statements describing present adverse conditions as hypothetical future risks are misleading."  (Opp. 30.)  As explained in Defendants' MTD—and above—the Company repeatedly warned that COVID-19 "*has caused, and may continue* to cause, significant reductions in demand or significant volatility in demand for certain of the company's products."  (MTD 19, 20 n.11, 21 (emphasis added).)  That language was not hypothetical; consequently, Plaintiff's assertion that the cautionary language was ineffective to invoke the safe harbor is wrong.

statements of fact masquerading with "I believe."  (Opp. 30-32; *see* MTD 22-23.)  Instead, they are statements expressing a view or belief in the Company's growth and its ability to execute, which are undeniable opinions.  *See Martin v. Quartermain*, 732 F. App'x 37, 40 n.1 (2d Cir. 2018) ("[E]xpressions of optimism [and] projections about the future are quintessential opinion statements").  Plaintiff also challenges statements that Defendants never argued were opinions.  (Opp. 31.)[9]  Statements of opinion are not actionable unless the plaintiff plausibly establishes that the speaker did not hold the belief professed, the supporting fact supplied was untrue, or the speaker omitted information whose omission makes the statement misleading to a reasonable investor.  (*See* MTD 22.)  Plaintiff has done none of the above.[10]  (*Id.* 23.)

**Puffery:**  Plaintiff's argument as to why descriptions of demand as "strong" and "robust" are not inactionable presumes, wrongly, that Plaintiff has adequately pleaded that demand was in fact "weak" or "poor"—which it has not done.  (Opp. 32-34.)  Moreover, as Defendants have previously explained (MTD 23-24), these are precisely the sort of vague statements that are "too general to cause a reasonable investor to rely upon them."  *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012).[11]

---

[9] Plaintiff's Opposition says:  "Indeed, Defendants, for example, stated . . . that 'end-user demand strength remains persistent' (¶120); that management had 'not seen an impact to demand' (¶122); and that inventory was increased to support strong demand (¶113)."  (Opp. 31.)  But Defendants never identified any one of these statements as opinions.  (*See* Rosenberg Decl. Ex. 1.)  Worse, the sole remaining example in Plaintiff's Opposition has been clearly modified to eliminate the opinion-indicating words regarding Defendants' "view" and what Defendants "think" from the statement.  (*Compare* Opp. 31 *with* SAC ¶ 147.)

[10] At most, Plaintiff "relies on the beliefs and opinions of confidential witnesses," but "none of the confidential witnesses is alleged to be the 'maker' of any of the alleged misstatements, and it is the facts known to, and the intent of, the maker of the statements which is ultimately relevant."  *Villare v. Abiomed, Inc.,* 2021 WL 4311749, at *20 (S.D.N.Y. Sept. 21, 2021) (citation modified).

[11] Plaintiff's reliance on *Hain* and *Peloton* is once again misplaced, as those cases involved specific allegations that plausibly contradicted the defendants' stated beliefs that demand was strong.  *See Hain*, 156 F.4th at 130-32 (detailing high return rates and distributors refusing to accept additional inventory, as well as improper accounting practices); *Peloton*, 153 F.4th at 300 (alleging three months of excess inventory sitting at shipping ports as of specific date).  Moreover, the Second Circuit in *Peloton* concluded that general characterizations of inventory, such as characterizations of inventory as "healthy," were non-actionable puffery.  153 F.4th at 299-300.

**C.      Plaintiff Fails To Allege a Strong Inference of Scienter for All Defendants.**

Plaintiff's claims independently fail because Plaintiff has not alleged facts demonstrating a strong inference of scienter as to any Defendant.  (MTD 25-33.)  Essentially conceding it fails to plead a motive and opportunity to defraud—by not even arguing otherwise (Opp. 34)—Plaintiff contends instead that it has alleged "strong circumstantial evidence of conscious misbehavior or recklessness" sufficient to establish scienter (*id.* 34-38).  It has not—particularly given that such allegations "must be correspondingly greater" given Plaintiff's failure to allege facts establishing motive and opportunity.  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

To show conscious misbehavior or recklessness, Plaintiff must "*specifically* allege[] defendants' knowledge of facts or access to information *contradicting their public statements*." (Opp. 34 (citation omitted) (emphases added)); *see also In re Farfetch Ltd. Sec. Litig.*, 802 F. Supp. 3d 652, 683 (S.D.N.Y. 2025) (requiring that a plaintiff "specifically identify the reports or statements containing" contradictory information).  Plaintiff has failed to do so.  None of Plaintiff's vague and generalized allegations relating to meetings, CWs' beliefs, point-of-sale data, or the alleged pull-in sale come close to alleging scienter because "[c]ritically absent" are "any specifics about when these alleged meetings occurred and what information was conveyed in them, let alone how such information contradicted defendants' challenged statements." *In re Canopy Growth Sec. Litig.*, 2024 WL 3445436, at *13 (S.D.N.Y. July 17, 2024).

- *MAP and Executive Meetings:*  Plaintiff's reliance on its MAP and Executive meeting allegations is insufficient for a simple reason:  Plaintiff does not identify *any* information presented at those meetings that contradicts Defendants' public statements, let alone rendered any public statement false or misleading when made.  (MTD 29-30.)  Plaintiff's focus on the meetings' general "date," "location," "number of attendees," "length," "topics of discussions," and "types of presentations" is irrelevant (Opp. 34-35), as none of these demonstrates any *specific facts* learned by any Defendant that contradicted their statements.

- *Point-of-Sale Data/Lowe's Link:*  Plaintiff's allegations that the CWs "detailed how Stanley had access to . . . sell-through data" also fail.  (Opp. 35-36.)  Despite an allegedly "massive" distribution list for Lowe's point-of-sale data (SAC ¶¶ 44, 77), Plaintiff does not allege that

any Defendant was ever included on this list, or detail what the data allegedly showed.

- *CWs' Knowledge:*  Plaintiff argues that scienter should be inferred from the *CWs'* "first-hand knowledge" of declining demand.  (Opp. 36.)  But Plaintiff does not identify any facts to show *Defendants'* knowledge, and Plaintiff does not allege any CW even spoke directly to any of the Individual Defendants,[12] let alone about allegedly declining demand.

- *Lowe's Pull-In:*  Vague allegations that the pull-in may have been discussed in some unspecified MAP meeting with unspecified participants[13]—or that Defendant Allan may have been involved in unspecified discussions about the pull-in—are insufficient.  *See In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018) (requiring "concrete allegations" of knowledge).  Moreover, Plaintiff offers no response to Defendants' point that knowledge of a pull-in does not establish knowledge of decreasing demand, particularly since pull-ins were common.  (*See* MTD 32.)  The pull-in allegations are therefore irrelevant to scienter.

Recognizing the SAC's lack of adequate scienter allegations, Plaintiff suggests that the Court rely on the "core operations theory" to impute scienter to officers who allegedly should have known facts related to the core operations of their company.  (Opp. 37-38.)  But as even Plaintiff's cited cases recognize (*id.* 37 (citing *Hain*, 156 F.4th at 148)), the validity of the core operations theory following passage of the PSLRA in 1995 has *not* been "clearly affirmed," and for now constitutes, at most, "supplemental support."  *Hain*, 156 F.4th at 148 n.19.[14]  Even so, this theory still does not help Plaintiff, as the SAC lacks specific factual allegations to support any inference of scienter under this theory.  Generalized "core-operations allegations do not fill the gap."  *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 246 (S.D.N.Y. July 31, 2023).

Ultimately, Plaintiff has not identified *any* specific report or discussion demonstrating any Individual Defendant's knowledge of decreasing demand at any relevant time.

---

[12] Plaintiff argues that CWs interacted with Individual Defendants because they collectively attended meetings.  (Opp. 35 n.17.)  But this is hardly evidence of "specific interactions" sufficient to demonstrate scienter.  (MTD 30.)

[13] Although Plaintiff contends in the Opposition that "[c]ontrary to Defendants' assertion, the Q4 2021 Pull-In was discussed at MAP meetings," (Opp. 35 (citing SAC ¶ 52)), it ignores that paragraph 52 of the SAC does not reference a pull-in at all and instead alleges that there were conversations discussing "whether Lowe's would help close the existing gap between actual and forecasted sales" (SAC ¶ 52).

[14] The scienter allegations in *Hain* are magnitudes more troubling than those here because the defendants in *Hain* made suspiciously timed stock sales, their compensation was specifically tied to the financial metrics that were allegedly misstated, and the individual defendants or senior employees departed or were fired from the company.

(MTD 27-33.)  Its scienter allegations therefore fail.[15]

## II.    PLAINTIFF FAILS TO ALLEGE SCHEME LIABILITY.

Although the SAC does not even mention a "scheme" separate from the alleged misstatements and omissions, Plaintiff now argues that it alleged "scheme liability" and that Defendants "waived" the ability to respond.  (Opp. 38-40.)  Not so.  *First*, Defendants have moved to dismiss "Plaintiff's Section 10(b) *and Rule 10b-5* claim . . . *in full*."  (MTD 9 (emphasis added).)  *Second*, Plaintiff does not plead any separate scheme in the SAC, but instead now attempts to recast its same misstatements-and-omissions theory (*see* SAC ¶¶ 188-98), including that Defendants should have disclosed the purported Lowe's pull-in and allegedly did not comply with SEC Regulation S-K (*id.*).  Defendants have explained why these claims fail (MTD 9-13, 20 n.11, 25-33), requiring dismissal of the scheme liability theory.  *See In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169, 190-91 (W.D.N.Y. 2022) (dismissing scheme claim for failure to plead specific deceptive act beyond misstatements or omissions).

## III.    PLAINTIFF'S SECTION 20(a) CLAIM MUST BE DISMISSED.

Because Plaintiff's Section 10(b) claim fails, so does its Section 20(a) claim.  (MTD 33.)

### CONCLUSION

Defendants request that Plaintiff's claims be dismissed in full with prejudice.  (MTD 34.)

---

[15] None of Plaintiff's cited cases preclude dismissal, as the scienter allegations in each of those cases are far stronger than the generalized allegations here. (*See* Opp. 34-38.)  Many of Plaintiff's cited cases involved express allegations that individual defendants acknowledged or touted their access to specific inventory reports or sales data in public statements. *See, e.g.*, *In re SolarEdge Techs., Inc. Sec. Litig.*, 2025 WL 1031154, at *12-13 (S.D.N.Y. Apr. 6, 2025).  Indeed, *In re SolarEdge* contradicts Plaintiff's position, as it recognizes that sales incentives are "common practice" and insufficient to "infer conscious misbehavior or recklessness." *Id.* at *11.  Plaintiff's other cited cases similarly involved far stronger allegations of suspicious stock sales or defendants being called out in meetings for lying to investors. *See, e.g.*, *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 308 (2d Cir. 2015); *In re STMicroelectronics N.V. Sec. Litig.*, 2025 WL 2644241, at *3 (S.D.N.Y. Sept. 15, 2025).  And *Funko*, which Plaintiff cites as supplemental support, is distinguishable because it included allegations explaining how inventory management was particularly important where the company had short-term inventory and prior inventory management issues resulting in a 40% share price drop, such that the allegations strongly supported scienter.  2026 WL 292424, at *20-21.

DATED this 19th day of

February 2026         By:

**CRAVATH, SWAINE & MOORE LLP**

*/s/ Timothy G. Cameron*
Timothy G. Cameron (*pro hac vice*)
Lauren M. Rosenberg (*pro hac vice*)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel. 212-474-1000
tcameron@cravath.com
lrosenberg@cravath.com

**SPEARS MANNING & MARTINI LLC**
Joseph W. Martini
Federal Bar No. ct07225
2425 Post Road, Suite 203
Southport, CT 06890
Tel. 203-292-9766
jmartini@spearsmanning.com

*Attorneys for Defendants*

11

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Timothy G. Cameron*
Timothy G. Cameron

12